UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| JOANN CHARLES and<br>BILLY CHARLES, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 5: 19-479-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| LEE COUNTY, KENTUCKY, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This case involves the tragic death of Joshua Charles while being held as a pretrial detainee at the Three Fork Regional Jail (the "Jail"). Joshua's parents, Joann and Billy Charles, allege that Joshua's death resulted from Jail employees' failure to provide Joshua with adequate medical care while he was in the Jail's custody. This action was filed on December 10, 2019, asserting federal and state law claims against various counties, jail officials, and employees. Because the plaintiffs have failed to allege sufficient facts indicating that Joshua Charles' death resulted from a Jail custom or policy, their claims against the county defendants will be dismissed. Additionally, the plaintiffs have failed to allege that Jail officials Pelfrey and Combs were directly involved in any constitutional violation, so the individual constitutional claims against them will be dismissed as well. The Court will deny dismissal of the plaintiffs' remaining constitutional claims regarding denial of medical care.

## I.      Background

Joshua Charles was booked into the Three Forks Regional Jail on November 9, 2018. Joshua informed the booking officer, Matt McQuinn, that he took blood pressure medication,

Suboxone, Xanax, and Keppra for seizures.  McQuinn documented that Joshua showed visible signs of withdrawal from Keppra, Suboxone, and Xanax.

Defendant Julie Adams was employed as a nurse at the Jail.  The plaintiffs claim that neither Adams nor any other medical provider saw Joshua between November 9 and November 20, 2018.  During this period, the only medical treatment Joshua received was twice-daily seizure medication.  According to the plaintiffs, no one checked Joshua's vital signs, gave him blood pressure medication, or monitored him for symptoms of medication withdrawal.

At 7:45 a.m. on November 20, 2018, other inmates believed Joshua was having a seizure and called for Jail staff to assist.  However, Defendant Andrea Collins, a Deputy Jailer, determined that Joshua was not having a seizure at that time.  The inmates called for staff again twenty minutes later because Joshua was in distress.  This time, Collins and Defendant Captain Jeff Ragan attended the scene, but again determined that Joshua was not having a seizure.

At 10:05 a.m., the inmates made a third call for assistance.  Although Collins and Ragan determined that Joshua was not having a seizure, they moved him to a darkened cell in the booking area for closer observation.  The plaintiffs allege that, at 10:50 a.m., Joshua had "another documented seizure."  The plaintiffs also contend that Defendant Adams was aware of Joshua's seizures but failed to check his vital signs or provide any medical treatment.

The plaintiffs allege that a number of jail employees failed to adequately monitor Joshua once he was moved to the cell near the booking area.  Specifically, they claim that Defendants Josh Collins, Cory Dunaway, Heath Gumm, Robert Jackson, Officer Who Made 1025 and 1243 Log Entries, and Officer Who Made 1025, 1042, 1112, and 1137 Log Entries, did nothing to ascertain Joshua's physical condition or even determine whether he was alive. [*See* Booking Log, Record No. 1-2.]

- 2 -

At 12:54 p.m., Deputy Jailer Josh Collins opened Joshua's cell door to tell him to make a phone call, but Joshua did not respond.  Jail staff unsuccessfully attempt CPR after Collins realized that Joshua was not breathing.

Joshua's parents are administrators of his estate.  They claim that Jail Administrator Harvey Pelfrey, Captain Keith Combs, Captain Jeff Ragan, Deputy Josh Collins, Deputy Andrea Collins, Deputy Cory Dunaway, Deputy Heath Gumm, Deputy Robert Jackson, Defendant Officer Who Made 1025 and 1243 Log Entries, Defendant Officer Who Made 1025, 1042, 1112, and 1137 Log Entries, Deputy Matt McQuinn, and Nurse Julie Adams are liable under 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution and Kentucky state law, for failing to provide Joshua with adequate medical care.  They also allege that the "Training/Supervising Defendants" who they define as Lee County, Wolfe County, Owsley County, Breathitt County, Harvey Pelfrey, and Keith Combs, are liable under § 1983 and *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 679 (1978).  The defendants argue that the federal claims should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.  Standard of Review

A motion to dismiss tests the legal sufficiency of a Complaint.  Rule 8 sets forth the general rules of pleading and requires that plaintiffs provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss, a claim need not contain "detailed factual allegations," but must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A complaint filled with "naked assertions devoid of further factual enhancement" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). Instead, a complaint must "contain sufficient matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[L]egal conclusions masquerading as factual allegations" will not suffice. *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

Additionally, any claims that are not recognized as cognizable causes of action under applicable law do not state a claim upon which relief can be granted and therefore may be dismissed under Rule 12(b)(6). *See, e.g., Judkins v. HSBC Mortg. Servs. Inc.*, 586 F. App'x 216 (6th Cir. Dec. 5, 2014) (Mem. Op.); *Camuel v. Kroger Co.*, No. 5: 17-cv-495-JMH, 2018 WL 4686420 (E.D. Ky. Sept. 28, 2018).

## III.    Deliberate Indifference to Serious Medical Need

The plaintiffs allege that the defendants denied Joshua Charles' constitutional right to adequate medical treatment by denying him medical care while he was detained.  Title 42 of the United States Code, section 1983, "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States. . . ." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).  To state a claim under § 1983, the plaintiff must allege a violation of a right secured by the Constitution and that the alleged deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  The first step is to identify the specific constitutional right allegedly violated.

The Constitution guarantees a right to adequate medical treatment for both convicted prisoners and pretrial detainees. *Miller v. Calhoun Cty.*, 408 F.3d 803, 812 (6th Cir. 2005); *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Prison officials' deliberate indifference to a convicted inmate's serious medical needs violates the Eighth Amendment's prohibition against cruel and unusual punishment. While the Eighth Amendment's protections apply only to post-conviction inmates, the Due Process Clause of the Fourteenth Amendment extends its protections to pretrial detainees as well. *See Bell v. Wolfish*, 441 U.S. 520, 545 (1979).

Courts have long applied the same standard when evaluating deliberate indifference claims, regardless of whether the plaintiff was a post-conviction or pretrial detainee:

> There are two parts to the claim, one objective, one subjective. For the objective component, the detainee must demonstrate the existence of a sufficiently serious medical need. . . . For the subjective component, the detainee must demonstrate that the defendant possessed a sufficiently culpable state of mind in denying medical care.

*Spears v. Ruth*, 589 F.3d 249, 254 (6th Cir. 2009) (quoting *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005)); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The subjective prong can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result," but "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895-96 (6th Cir. 2004) (quoting *Farmer*, 511 U.S. at 835, 837).

The continuing validity of this standard regarding claims by pretrial detainees has been placed into doubt in light of the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). In *Kingsley*, a pretrial detainee filed a § 1983 complaint, alleging that county jail officers used excessive force against him in violation of the Fourteenth Amendment's due

process clause. 576 U.S. at 393. The case proceeded to trial and the district court instructed the jury that the plaintiff was required to prove that the defendants' use of force was "unreasonable in light of the facts and circumstances at the time" and that the defendants "knew that using force presented a risk of harm to plaintiff, but they recklessly disregarded plaintiff's safety by failing to take reasonable measures to minimize risk of harm to plaintiff." *Id.*

The Supreme Court concluded that the jury had been instructed incorrectly and embraced a new test for pretrial detainees seeking to prove excessive force claims. It held that rather than look to the defendant's subjective belief regarding his use of force, a pretrial detainee "must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396-97. The Court determined that this result is consistent with prior precedent holding that the Due Process Clause protects pretrial detainees from the use of excessive force that amounts to punishment. *Id.* at 397-98 (citing *Graham v. Connor*, 490 U.S. 395 n.10 (1989)). And while punishment can consist of actions taken with an "expressed intent to punish," it can also consist of actions that are not "rationally related to a legitimate nonpunitive governmental purpose" or actions that "appear excessive in relation to that purpose." *Id.* at 398 (quoting *Bell v. Wolfish*, 441 U.S. 520, 561 (1979)).

The Court observed that *Bell* applied an objective standard "to a variety of prison conditions, including a prison's practice of double-bunking, and did not consider the prison officials' subjective beliefs about the policy. *Id.* Instead, the Court "examined objective evidence, such as the size of the rooms and available amenities, before concluding that the conditions were reasonably related to the legitimate purpose of holding detainees for trial and did not appear excessive in relation to that purpose." *Id.*

The *Kingsley* Court also noted that an objective standard is workable, as it was consistent with the pattern jury instructions in several circuits. *Id.* at 399. Additionally, officers are often trained to interact with detainees as if their conduct is subject to an objective reasonableness standard. The Court observed that the objective standard adequately protects officers who act in good faith, as the officer's conduct must be judged from the perspective and with the knowledge of the defendant officer. *Id.* And officers enjoy qualified immunity unless they violate clearly established rights, such that "it would have been clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Id.* at 400. Accordingly, "it is unlikely . . . that a plaintiff could overcome these hurdles where an officer acted in good faith." *Id.*

The plaintiffs urge this Court to adopt an objective test with respect to their claims that the defendants failed to provide adequate medical care to Joshua Charles. The plaintiffs recognize that "deliberate indifference" contemplates culpability which would require the finder of fact to inquire into the defendants' state of mind. *See McCowan v. Morales*, 945 F.3d 1276, 1291 n.12 (10th Cir. 2019) ("We do note . . . that a claim of deliberate indifference to serious medical needs by its very terminology seems to require both a subjective and an objective test. "Deliberate" certainly invokes a subjective analysis and "serious medical needs" invokes an objective analysis.") (emphasis in original). Accordingly, the plaintiffs have styled Count 1 of the Complaint as a claim for "Objective Unreasonableness" in violation of the Fourteenth Amendment. For good measure, Count 2 is styled as Deliberate Indifference in violation of the Eighth Amendment. The plaintiffs acknowledge that the Eighth Amendment does not apply directly to Joshua Charles as a pretrial detainee. However, they

ask the Court to apply the traditional two-prong analysis *via* the Fourteenth Amendment if "objective unreasonable" is not recognized as a cause of action.

The plaintiffs rely heavily on the decision in *Love v. Franklin Cty., Ky.*, 376 F. Supp. 3d 740 (E.D. Ky. 2019), in which another judge of this Court adopted an objective test for a pretrial detainee's claim that the defendants violated her constitutional rights by denying her medical care while she was in labor. There, the Court observed that *Kingsley* was not "focused exclusively to excessive force precedent" but instead "looked at challenges by pretrial detainees generally." *Id.* at 745. The *Love* Court reasoned that conditions of confinement such as double bunking are analogous to medical care and, therefore, support application of the objective test for denial-of-medical-care claims. *Id.*

Although the rationale applied in *Love* is appealing, the undersigned is bound to apply circuit precedent. In *Richmond v. Huq*, 885 F.3d 928 (6th Cir. 2018), the plaintiff alleged that she received constitutionally-inadequate treatment for a burn while being held as a pretrial detainee at a county jail. Although Richmond's alleged harm occurred when she was a pretrial detainee, she sued the jail's medical staff for violating her Eighth Amendment right to be free from cruel and unusual punishment. *Id.* 937. The Sixth Circuit noted:

> The Eighth Amendment provides an inmate the right to be free from cruel and unusual punishment. The Due Process Clause of the Fourteenth Amendment provides the same protections to pretrial detainees. This Court has historically analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims under the same rubric. A prisoner's Eighth Amendment right is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs.

*Id.* The court went on to explain that "[t]he objective component requires the plaintiff to show that the medical need at issue is 'sufficiently serious.'" *Id.* at 938 (citing *Farmer*, 511 U.S. at 834). And "[t]he subjective component requires a showing that the 'official knew of and

disregarded an excessive risk to inmate health or safety.'"  *Id.*  With those standards in mind, the court evaluated the district court's grant of summary judgment with respect to each defendant, reversing the lower court's decision, in part.

While neither party addressed *Kingsley*, the court acknowledged its *potential* effect in a footnote.  *Id.* at 938 n.3.  It observed that no circuit had applied *Kingsley* "specifically to a deliberate indifference to a detainee's serious medical needs claim."  *Id.*  However, it "recognize[d] that this shift in Fourteenth Amendment deliberate indifference jurisprudence calls into serious doubt whether [the plaintiff] need even show that the individual defendant-officials were subjectively aware of her serious medical conditions and nonetheless wantonly disregarded them."  *Id.*

Likewise, in *Winkler v. Madison Cty.*, 893 F.3d 877, 890-91 (6th Cir. 2018), the court applied the objective/subjective standard to a pretrial detainee's claim of deliberate indifference under the Fourteenth Amendment.  After affirming the district court's decision, the court denied the plaintiff's petition for rehearing *en banc* to determine whether an objective-only standard should apply in light of *Kingsley*.  (No. 17-6073, July 31, 2018).

And as recently as July of this year, the Sixth Circuit indicated that the objective/subjective framework still applies to deliberate indifference claims by pretrial detainees.  *Cameron v. Bouchard*, 815 F. App'x 978 (6th Cir. July 9, 2020).  Despite the plaintiffs and their amicis' pleas that it adopt the objective-only test in light of *Kingsley*, the court declined to rule on the issue, noting that it would not change the outcome in the case.  It acknowledged that circuits are split on whether claims arising under the Fourteenth Amendment are still governed by *Farmer* or some test fashioned under *Kingsley*, which would require only an objective inquiry.  *Id.* (comparing *Castro v. Cty. of Los Angeles*, 833 F.3d 1060,

- 9 -

1070 (9th Cir. 2016) (*en banc*) (adopting objective standard for deliberate indifference (failure-to-protect) claims by pretrial detainees); *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017) (adopting objective standard for deliberate indifference with respect to prison conditions); *Miranda v. Cty. of Lake*, 900 F.3d 335, 351-52 (7th Cir. 2018) (adopting objective standard for deliberate indifference to serious medical needs) *with Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 419 n.4 (5th Cir. 2017) (declining to reconsider earlier precedent treating Eighth and Fourteenth Amendment serious-medical-needs claims alike); *Whitney v. City of St. Louis*, 887 F.3d 857, 860 n.4 (8th Cir. 2018) (same); *Nam Dang by and through Vina Dang v. Sheriff, Seminole Cty. Florida*, 871 F.3d 1272, 1279 n.2 (11th Cir. 2017) (same).

The arguments in favor of extending *Kingsley* to claims of inadequate medical care under the Fourteenth Amendment are not as simple as the plaintiffs suggest.  Prisoners' rights to be free from excessive force and to receive adequate medical care are like apples and oranges.  The plaintiffs' rationale indicates that withholding medical care, at least to some degree, is a permissible form of punishment under the Eighth Amendment.  Additionally, it suggests that convicted inmates are entitled to less, or worse, healthcare than pretrial detainees.  Maybe this is true, but the plaintiffs have not identified any authority supporting that proposition.

Given these questions, the undersigned is unwilling to extend the current state of the law.  However, the plaintiffs indicate that the issue is currently pending before the Sixth Circuit in *Griffith v. Franklin Cty.*, 19-5378 (6th Cir.).  The Court notes that the matter was heard for oral argument on January 28, 2020, and the plaintiff in that matter is represented by the same attorney as the plaintiffs here.  Because the Sixth Circuit's forthcoming decision in *Griffith*

may inform the Court's decision in this case, the defendants' motion to dismiss the deliberate indifference/failure-to-provide-medical-care claims will be denied.

### IV.    *Monell* **Liability**

The plaintiffs allege that Lee County, Wolfe County, Owsley County, and Breathitt County, ("Training/Supervising Defendants") are liable for Josh Charles' death under *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658 (1978).[1]   [Complaint, Count 3] *Monell* requires the plaintiff to establish that the defendant engaged in a "policy or custom" that was the "moving force" behind the deprivation of the defendant's rights.  436 U.S. at 694; *Doe v. Claiborne Cty.*, 103 F.3d 495, 507 (6th Cir. 1996).  The plaintiff can make this showing by demonstrating one of the following:

> (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell*, 436 U.S. at 694).

Plaintiffs are "required to identify the practice or policy that forms the basis of their claim."  *Vidal v. LFUCG*, No, 5: 13-117-DCR, 2014 WL 4418113 (E.D. Ky. Sept. 8, 2014) (quoting *Ghaster v. City of Rocky River*, No. 1: 09-cv-2080, 2010 WL 2802685, at *7 (N.D. Ohio May 12, 2010)).  Here, the plaintiffs do not object to any official policy but, instead, contend that the county defendants maintained a policy of inadequate supervision/training and,

---

[1]     The plaintiffs also list Harvey Pelfrey and Keith Combs as "Training/Supervising Defendants," but individuals are not proper defendants under *Monell*.  *See Phillips v. City of Cincinnati*, No. 1: 18-cv-541, 2020 WL 2289277, at *6 (S.D. Ohio May 29, 2019) ("[T]he raison d'etre of *Monell* is to impose liability on a <u>municipality</u> under certain circumstances—not individuals.").

possibly, of tolerating federal rights violations.  The defendants argue that the claim should be dismissed because it lacks sufficient factual support and relies solely on conclusory allegations.

      The plaintiffs allege the following in support of the *Monell* claim:   The Training/Supervising Defendants did not train their subordinates to respond appropriately to serious medical conditions.  [Complaint, ¶ 34]  The Training/Supervising Defendants knew how their subordinates reacted in situations involving serious medical conditions and intentionally chose not to intervene.  *Id.* at ¶ 36.  Through their actions and inactions, these defendants acquiesced in, endorsed, and ratified their subordinates' failure to treat obviously serious medical conditions.  *Id.* at ¶ 37.  The failure and refusal of these defendants and their subordinates to identify and treat obviously serious medical conditions among the inmate population was so common and widespread as to amount to a practice, and therefore an unwritten policy of the jail.  *Id.* at ¶ 38.  The jail had a practice of "permitting non-medical staff to diagnose and treat medical conditions without input from medical professionals.  Medical Defendants knew of and acquiesced in, endorsed, and ratified this practice.  The practice was so common and widespread as to amount to an unwritten policy of the jail."  *Id.* at ¶ 39.

      These are the type of legal conclusions, couched as factual assertions, that are insufficient to survive a motion to dismiss.  The plaintiffs have not provided any *facts* indicating that the Jail had any particular policy or practice or that any conduct occurred that was "common and widespread."  While the Complaint includes specific allegations that untrained individuals assessed Joshua Charles' medical condition, there are no factual allegations that such conduct occurred in other instances.  And aside from speculation that the officers who attended to Joshua had not been properly trained, there is no factual support for

the assertion that the Training/Supervising Defendants did not adequately train their subordinates. *See Vidal*, 2014 WL 4418113, at *3 (citing *Hutchison v. Metro Gov't of Nashville & Davidson Cty.*, 685 F. Supp. 2d 747, 751 (M.D. Tenn. 2010)). These allegations "stop short of the line between possibility and plausibility regarding municipal liability." Therefore, the *Monell* claims will be dismissed.

## V.   Individual Capacity § 1983 Claims Against Harvey Pelfrey and Keith Combs

Pelfrey was the Jail's Administrator and Combs was a Captain at the Jail. The plaintiffs claim that both were responsible for employing, training, supervising, and disciplining all employees and independent contractors at the Jail, as well as any related policies and procedures. The plaintiffs bring the deliberate indifference/failure-to-provide-medical-care and negligence/gross negligence claims against these defendants in their individual capacities. The defendants argue that the § 1983 claims should be dismissed under Rule 12(b)(6).[2]

A supervisor's failure to train or supervise an offending individual "is not actionable absent a showing that the official either encouraged or in some way directly participated in [the wrongful conduct]. At a minimum, a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the alleged misconduct." *Harper v. Conrad*, 2014 WL 5100625, at *4 (W.D. Ky. Oct. 10, 2014) (quoting *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989)). In other words, the supervisor must have some personal involvement in the underlying misconduct that caused the alleged constitutional violation.

---

[2] The defendants have not moved to dismiss the negligence/gross negligence claims, so those remain pending. Additionally, while the defendants make a passing reference to qualified immunity, they fail to flesh out an argument on this ground. [Record No. 17-1, p. 8] Accordingly, the Court will not engage in an immunity analysis, as doing so not necessary and granting qualified immunity at the motion-to-dismiss stage is generally disfavored. *See Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

Absent direct involvement, "[a]n attempt to hold an officer liable in his individual capacity for his alleged failure to adequately train employees . . . improperly conflates a § 1983 claim of individual supervisory liability with one of municipal liability." *Id.* (internal quotation marks omitted) (quoting *Harvey v. Campbell Cty.*, 534 F. App'x 557, 563 (6th Cir. 2011)).

The Complaint in this case barely mentions Pelfrey and Combs. There is no allegation that either was on the scene time in question and there is no indication that either interacted with any other defendant in a way that caused Joshua's harm. Put simply, the Complaint is devoid of any factual allegation indicating that either "directly participated or implicitly authorized, approved, or acquiesced" in the alleged behavior that led to Joshua's death. Accordingly, the individual capacity § 1983 claims asserted against them will be dismissed.

## VI.   Conclusion

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1.      The defendants' partial motion to dismiss **[Record No. 17]** is **GRANTED**, in part, and **DENIED**, in part.

2.      The *Monell* claims asserted against Training/Supervising Defendants Lee County, Wolfe County, Owsley County, and Breathitt County **[Count 3]** are **DISMISSED**. These defendants are terminated as parties to this action.

3.      The § 1983 individual capacity claims against Defendants Harvey Pelfrey and Keith Combs are **DISMISSED.**

4.      The § 1983 individual capacity claims asserted against individual Defendants Jeff Ragan, Josh Collins, Andrea Collins, Cory Dunaway, Heath Gumm, Robert Jackson, Matt

- 14 -

McQuinn, Julie Adams, Officer Who Made 1025 and 1453 Log Entries, and Officer Who Made 1025, 1042, 1112, and 1137 Log Entries **[Count 1 and Count 2]** remain pending.

5.      The negligence/gross negligence claims asserted against individual Defendants Harvey Pelfrey, Keith Combs, Jeff Ragan, Josh Collins, Andrea Collins, Cory Dunaway, Heath Gumm, Robert Jackson, Matt McQuinn, Julie Adams, Officer Who Made 1025 and 1453 Log Entries, and Officer Who Made 1025, 1042, 1112, and 1137 Log Entries **[Count 4]**[3] remain pending.

Dated: September 8, 2020.



Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky

---

[3]      The plaintiffs have styled their third (*Monell* Liability) and fourth (Negligence/Gross Negligence) Counts as "Count 3."  For ease of reference, the Court will refer to Negligence/Gross Negligence as "Count 4."